UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

***

| | |
|---|---|
| SHFL ENTERTAINMENT, INC, | 2:12-cv-01782-GMN-VCF |
| Plaintiff, | **ORDER** |
| vs. | (*Emergency* Motion To Disqualify Defendant |
| DIGIDEAL CORPORATION, | DigiDeal Corporation's Counsel of Record #15) |
| Defendant. | |

Before the court is plaintiff SHFL Entertainment, Inc.'s *Emergency* Motion To Disqualify Defendant DigiDeal Corporation's Counsel of Record. (#15). Defendant DigiDeal Corporation filed an Opposition (#20), and plaintiff filed a Reply (#25). The court held a hearing on January 3, 2013. (#26).

**Background**

Plaintiff filed its complaint on October 10, 2012, against DigiDeal relating to Patents Nos. 6,651,982 ("the '982 Patent") titled "Card Shuffling Apparatus With Integral Card Delivery," and 7,523,935 ("the '935 Patent") titled "Card Shuffling Apparatus With Integral Card Delivery" (hereinafter "Asserted Patents"). (#1). Plaintiff asserts a claim for infringement of the Asserted Patents. *Id.* On October 31, 2012, attorney Richard H. Newman was added to the docket as counsel for DigiDeal. On December 3, 2012, defendant DigiDeal filed a motion to dismiss. (#10).

Plaintiff filed the instant *emergency* motion to disqualify on December 10, 2012. (#15). The court entered a minute order on December 14, 2012, ordering that defendant's response to the motion (#15) is due on or before December 21, 2012, that plaintiff's reply is due on or before December 28, 2012, and that a hearing is scheduled for January 3, 2013. (#16). Defendants DigiDeal filed an

opposition on December 21, 2012. (#20). On December 27, 2012, the parties filed a stipulation to stay discovery pending the resolution of plaintiff's *emergency* motion to disqualify (#15), wherein they agreed to hold the Rule 26(f) conference 21 days after the court rules on the *emergency* motion to disqualify. (#22). Plaintiff's reply was filed on December 28, 2012. (#24). The court signed the stipulation to stay (#22) on January 2, 2013. (#23). The court held a hearing on January 3, 2013, and took the matter under submission. (#26).

**Motion To Disqualify**

Plaintiff asserts that DigiDeal's counsel of record Mr. Newman should be disqualified from this action as he "previously served as SHFL's in-house patent counsel (one of only two for nearly his entire tenure) where he oversaw the management of SHFL's worldwide portfolio of intellectual property." (#15). Plaintiff states that Mr. Newman had "access to confidential information regarding SHFL's product and intellectual property" and provided legal advice about products and "patents at the heart of this patent infringement case." *Id.*

    A.    **Plaintiff's Relevant Facts**

When plaintiff became aware of Mr. Newman's representation of DigiDeal, plaintiff's counsel sent an email to Mr. Newman to question his conflict of interest. *Id.* Mr. Newman responded that he began working with SHFL "a few years after both patents identified in the complaint has been filed," and that he did not "anticipate the issues in this matter involving information other than that which is already included in the public record." *Id* (Exhibit 4). After investigating further, plaintiff's counsel sent another email to Mr. Newman to clarify his role at SHFL. *Id.* Mr. Newman stated in response that he "cannot recall ever being involved in the prosecution or litigation of any shuffler patent while at Shuffle Master..." and that his role changed "to primarily include handling trademark matters." *Id* (Exhibit 6). Mr. Newman also stated that since the patents at issue are based on applications filed many

years before he joined SHFL, he "would have had no involvement in the drafting of a new disclosure[1] describing it." *Id.*

Plaintiff then searched its records related to Newman's work at the company, as discovered the following: (1) Mr. Newman had filed numerous trademark application on behalf of SHFL for its shufflers (Exhibit 8); (2) Mr. Newman performed in depth legal analyses regarding SHFL's patents and shufflers (Exhibit 9); (3) Newman prepared "patent marking reviews" to determine whether particular products incorporated the technology of a patent and should be "marked" with that patent (Exhibit 9); (4) Newman conducted patent marking review for one of the products and patents in this case, the *DeckMate* shuffler and '982 Patent (#Exhibit 9), which included *Markman*-type analysis interpreting the meaning of the claims in the patent; (5) Newman had attorney-client privileged discussions with SHFL engineering personnel regarding the meaning of the claims in on the Asserted Patents (Exhibit 7); (6) Newman drafted and reviewed patent disclosures, including reviewing and revising a confidential patent disclosure relating to a proposed version of the *DeckMate 2*; and (7) Newman emailed with other company employees discussing confidential information related to the mechanics and technology used in the *DeckMate* shuffler and other proprietary shufflers (#Exhibit 7). *Id.*

After finding this information, plaintiff's counsel wrote Newman an email explaining the concern in light of Newman's involvement. (#15 Exhibit 10). Newman responded by stating "If you have any dispositive documents which support your contention then please forward them to my attention immediately so we can give them proper consideration." (#15 Exhibit 11). Plaintiff provided Newman with redacted versions of the same, and Newman and his firm refused to withdraw from this action. (#15).

B.   **Plaintiff's Arguments**

Pursuant to Nevada Rule of Professional Conduct 1.9 (a), "[a] lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a

---

[1] A "disclosure" is a confidential internal report regarding the scope of a patent. (#15).

substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing." A party moving to disqualify an attorney under Rule 1.9 (a) must establish: (1) that it had an attorney-client relationship with the lawyer, (2) that the former matter and the current matter are substantially related, and (3) that the current representation is adverse to the party seeking disqualification. *Nevada Yellow Cab Corp. v. Eighth Jud. Dist. Ct.*, 123 Nev. 44,50, 152 P.3d 737, 741 (2007).

To determine whether the current representation is "substantially related to the former representation," the Court must: (1) make a factual determination concerning the scope of the former representation; (2) evaluate whether it is reasonable to infer that the confidential information allegedly given would have been given to a lawyer representing a client in those matters; and (3) determine whether that information is relevant to the issues raised in the present litigation. *Waid v. Eight Judicial District Ct.*, 121 Nev. 605, 610, 119 P.3d 1219, 1223 (2005);see also *Sanchez v. Am. Family Mut. Ins. Co.*, 2012 WL 4498226, *2 (D. Nev. Sept. 28, 2012) (applying the *Waid* test to determine whether two matters were "substantially related").

Plaintiff asserts that when applying this test, there is "no doubt that Newman and Howard & Howard must be disqualified from representing DigiDeal in this case.[2]"  (#15).

1. **Mr. Newman's Position and Work at SHFL**

Plaintiff states that Newman, as in-house counsel, was involved in handling worldwide intellectual property matters, was directly involved in work concerning SHFL's shuffler products, and applied for state and federal trademarks and performed patent marking reviews for shufflers such as *DeckMate*. (#15). Plaintiff asserts that "we know for certain that Newman actually received confidential information," and that "most - if not all- of what Newman did for SHFL depended on his access to confidential information." *Id.* Mr. Newman applied for trademarks, performed legal analyses

---

[2] DigiDeal's counsel agreed during the hearing that if the court disqualifies Newman, Howard & Howard is also disqualified pursuant to Nevada Rule 1.10(a).

regarding the '982 Patent at issue in this case, and revised internal, confidential disclosures concerning the scope and application of SHFL's patents, including '982 Patent. *Id.*

Plaintiff argues that "Newman's insight into the SHFL's shufflers and patents was only available to him in his capacity as an in-house counsel at SHFL, and would not have been disclosed to him or any other outsider otherwise," and that "not only did Newman have confidential information, he received confidential information related to the specific subject matter of this case." *Id.* The confidential information received by Newman is not only relevant, but is "critical to this action." *Id.* Plaintiff asserts that "Newman drafted a patent disclosure and performed a patent marking review for the *DeckMate* shuffler with respect to the '982 Patent" and "decide[d], and then advise[d] SHFL as to whether the *DeckMate* shuffler incorporated the claims provided for in the '982 Patent," which is "precisely the question the ultimate trier of fact will have to determine in this case." *Id* (Exhibit 9, Redacted[3] Patent marking Analysis)(Attached Hereto). The information possessed by Newman, plaintiff argues, "is directly related to the claim construction process that the parties will undertake early on in this dispute." *Id.*

Plaintiff asserts that there is no question that Newman's current representation is "substantially related" to his former work with SHFL, as he was involved with the same products at issue in this case and the same patent at issue in this case." *Id.*

 2.  **Newman's Access to Confidential, Organizational Information Related to SHFL**

Newman argues in his emails that since the patents were issued prior to his employment, no conflict exists. (#15). Plaintiff asserts that this argument fails, as (1) under Rule 1.9(a), "[t]he critical question is whether Newman's work at SHFL was substantially related to the subject matter of this action," (2) "the documents uncovered by SHFL show that Newman actually delivered and received SHFL confidential information related to the matters at issue in this case, including the *DeckMate*

---

[3] Plaintiff asserts that it can provide the court with un-redacted versions of any exhibits if the court deems it necessary. (#15).

shuffler and the '982 Patent," (3) "even if he had not worked on the accused product and patents at issue in this case, Newman nevertheless received confidential, organizational information related to SHFL's approach to intellectual property generally, and patents specifically, which establishes a "substantial relationship" between his work at Shuffle Master and the subject matter of this case. *In re N. Am. Deed Co.*, 334 B.R. at 453," and (4) "the fact that Newman left SHFL a few years ago does not diminish the grounds for disqualification," as "[t]he information that he possesses is not at all stale. *See Eon Corp. IP Holdings LLC v. Flo TV Inc.*, No. 10-812 RGA, 2012 WL 4364244 (Sept. 24, 2012) (disqualifying two attorneys from appearing adverse to a former client in a patent case where the two attorneys worked on a substantially related matter 17 years earlier)." *Id.*

Plaintiff argues that the case of *Chugach Elec. Ass'n v. U S. Dist. Court for Dist. of Alaska at Anchorage,* 370 F.2d 441, 443 (9th Cir. 1966) is instructive. *Id.*  The Ninth Circuit held that where a corporation moved to disqualify its opponent's attorney because he had previously served as the corporation's in-house counsel, even though "an actual conflict of interest [was] not clearly established...from a study of the record," disqualification was appropriate. *Chugach Elec. Ass'n,* 370 F.2d at 443.  The court held that "[a] likelihood ... exists which cannot be disregarded that [an in-house attorney's] knowledge of private matters gained in confidence would provide him [or her] with greater insight and understanding of the significance of subsequent events . . . and offer a promising source of discovery." *Id.*

The court in *In re N. Deed Co.,* 334 B.R. at 453 (citing *Chugach*), held that the "substantial relatedness" requirement for disqualification "can be established through a showing of extensive knowledge of a client's operations and strategy." Plaintiff argues that Newman has a "playbook of information" regarding SHFL's operations and strategy involving intellectual property.  (#15).

### 3.     Mr. Newman's Conflict Is Imputed to Howard & Howard

Plaintiff argues that under Rule 1.10(a) Howard &Howard are not permitted to represent defendant DigiDeal, even if Newman had been timely screened off the case. (#15). Nevada Rule of Professional Conduct 1.10(a) states that "[w]hile lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules 1.7, 1.9, or 2.2, unless the prohibition is based on a personal interest of the prohibited lawyer and does not present a significant risk of materially limiting the representation of the client by the remaining lawyers in the firm."

### C.     Defendant's Argument

Defendant argues that Newman was not privy to confidential information, and that plaintiff's motion (#15) "neglects to mention several critical and undisputed facts:

(1) The '982 patent was filed in 2002 and issued on November 25, 2003, almost two years before Newman began working for Plaintiff. The '935 patent was filed in 2003 and issued on April 28, 2009, again, almost two years before Mr. Newman began working for SHFL,

(2) Newman "was never involved in the preparation, decision making, development, prosecution, or defense of any patents - including the '982 or '935 patents,"

(3) "the only issue is whether he was privy to any confidential information concerning the '982 or '935 patents - which he was not,"

(4) Newman had no involvement in the creation of any activities which culminated in the existence of any of SHFL's patent rights which are alleged to be infringed,"

(5) the information concerning the '982 and '935 patents was publicly available in 2003 - three years before Mr. Newman began working at SHFL,

(6) the '982 and '935 patents relate back to an earlier patent (the '981 patent) which was filed in 2001,

(7) "[t]he only issue is whether or not DigiDeal is infringing SHFL's '982 and '935 patents, not whether it infringed on a particular iteration of SHFL's *DeckMate*. Therefore, any work Mr. Newman might have performed on the *DeckMate* is immaterial,"

(8) "Newman's work on SHFL's trademarks has no bearing on this matter,"

(9) "[t]he patent marking memo allegedly worked on by Mr. Newman also has no relevance, as the memo is an independent check by someone without any prior knowledge of a particular patent merely to confirm that a patent's claims cover the product on which a patent is identified in accordance with the relevant case law at the time,"

(10) Mr. Newman "does not possess any knowledge concerning Plaintiff's methods, strategies, or a so-called "playbook," and

(11) "[p]laintiff's "evidence" in support of its motion consists of multiple e-mails and documents supposedly prepared and/or received by Mr. Newman; however, none of the material concerns the preparation or defense of the patents at issue, or deal with information which was not publicly available." (#20).

Defendant asserts that the '982 was issued two years prior to Newman being employed by plaintiff, and that the '935 patent was not even issued until two years *after* Newman's employment ended. *Id*. Defendant contends that Mr. Newman worked for SHFL from August 2005, to August 2007, and took instruction from Jennifer Farrar, who was lead patent counsel and the head of the intellectual property department. *Id.* Mr. Newman's duties included "1) managing the new invention submission and disclosure process, which consisted of preparing disclosures describing new inventions, 2) training and managing patent agents in drafting new invention disclosures, 3) creating a list of the new inventions to be presented by SHFL's lead patent counsel, Jennifer Farrar, to business group leaders, 4) registering trademarks, and 5) generally supporting the needs of the intellectual property department and executive team." *Id.* Defendant asserts that Newman was not involved in the preparation of any patents

or patent applications, including the '981, '982, or 935 patents (the two patents at issue are continuations of the '981 patent). *Id.*

Defendant argues that all of the information and subject matter disclosed in the '981, '982, and '935 patents was published as a patent and publically available as part of the US Patent. *Id.* Mr. Newman did not oversee the portfolio of intellectual property, rather he managed the portfolio of **trademarks.** *Id.* Defendants argue that Mr. Newman "never drafted a patent disclosure," which is evidenced by plaintiff's annual report from 2007, indicating that the *DeckMate* was first introduced in 2002, three years prior to Mr. Newman working for plaintiff. *Id.*

Defendant asserts that Mr. Newman's work on the patent marking memo involving the '982 patent has no relevance, as the "patent marking memo does not require any prior knowledge or confidential information, as it is the *same analysis the Court would do* based on the existing evidence." *Id* (emphasis added). The Asserted Patents were publically available *years* before Mr. Newman's employment, and the products could be "purchased and taken apart by any third party to determine their mechanics and the technology used." *Id.* Defendant states that this case "exclusively involves whether the Asserted Patents are being infringed by the Defendant DigiDeal's product. Thus, all of the information that would be involved in deciding this case is currently publicly available, and was also publicly available prior to, during and after Mr. Newman's employment at SHFL, and cannot be considered as confidential information." *Id.*

Mr. Newman's employment ended over five years ago, and plaintiff's company has undergone "significant material changes since then. SHFL has replaced its entire executive team since 2007, and some key executive positions have been filled and subsequently replaced more than once. Since 2007, SHFL has employed four different Chief Executive Officers and two different General Counsel." *Id.* Mr. Newman does not have a "playbook" and is unaware of a "playbook" ever existing. *Id.*

The plaintiff's cause of action "must be based solely on a construction of the Asserted Patents' claims, with consideration of their specifications and prosecution histories (collectively referred to as the "intrinsic evidence"), according to and guided by current authority," and "the issues to be litigated would not be affected by any knowledge of how SHFL protected its intellectual property in 2002 or 2003 when the Asserted Patents were filed, or during Mr. Newman's employment from 2005 to 2007." *Id.*  The case only concerns whether the Asserted Patents cover Digideal's products, and the Asserted Patents were applied for and issued years prior to Mr. Newman's employment. *Id.*

Defendants also argue that Mr. Newman's work at SHFL did not involve the same products at issue in this case, as this litigation does not concern the SHFL shufflers, and Digideal products did not even exist during Mr. Newman's employment with plaintiff. *Id.*

Defendant asserts that "[t]he burden of proving whether two matters are the same or substantially related falls on the party moving for disqualification. The focus of the inquiry should be on the precise nature of the relationship between the present and former representation. A superficial resemblance between the matters is not sufficient. *Sanchez v. American Family Mut. Ins. Co.*, Slip Copy, 2012 WL 4498226 (D. Nev. 2012)." *Id.*  Defendant also states that "[p]articularly strict judicial scrutiny" should be given to a motion to disqualify opposing counsel because there is a possibility of abuse of tactical advantage. *Rebel Communications, LLC v. Virgin Valley Water Dist.,* 2011 WL 677308, *5 (D. Nev. Feb. 15, 2011)." *Id.*

### 1. Scope of Former Representation

Newman began working for SHFL in 2005, and at that time the company was splitting into two main divisions: entertainment products and shufflers. (#20).  Newman was hired "to handle intellectual property matters relating to entertainment products, which specifically excluded shufflers. That plan was eventually scrapped and his role changed to primarily include handling all trademark matters, drafting new invention disclosures to be sent to outside counsel and managing the technical writers (aka "patent

liaisons") who facilitated in the invention disclosure process." *Id.* Defendant asserts that since his employment began years after the Asserted Patents were applied for, he necessarily had no involvement in the drafting of any new disclosures describing the Asserted Patents. *Id.*

Defendant admits that Mr. Newman did draft the marketing memo relating to the '982 patents, but claim that the memo has no relevance and involves the same independent analysis as the court will use to examine plaintiff's claim. *Id.*

    2.    **Whether It Is Reasonable To Infer That The Confidential Information Allegedly Given Would Have Been Given To A Lawyer Representing A Client In Those Matters.**

Defendant argues that plaintiff has not presented the court with any evidence to support its assertion that Mr. Newman somehow obtained confidential information which impacts the current case. *Id.* Defendant states that "[e]ven though Mr. Newman drafted disclosures for several of SHFL's new inventions, he did not do so for the Asserted Patents for the simple reason that they were not new inventions and pre-dated his employment by several years," and that the reality is that the underlying case can only be based on matters which are of public record (i.e. whether or not DigiDeal's product infringes on the Asserted Patents issued by the USPTO.)." *Id.*

    3.    **Whether the Information is Relevant to the Issues Raised In the Present Litigation**

Defendant asserts that the court will only be "analyzing intrinsic evidence which was all developed by SHFL years before Mr. Newman employment," and that during his employment, he did not receive any information of a confidential nature which would be relevant to the instant case. *Id.*

**C.**    **Discussion**

    1.    **Relevant Law**

Local Rule IA 10-7 provides that "[a]n attorney admitted to practice pursuant to any of these Rules shall adhere to the standards of conduct prescribed by the Model Rules of Professional Conduct as adopted and amended from time to time by the Supreme Court of Nevada, except as such may be

modified by this Court." The Nevada Rules of Professional Conduct (hereinafter "Nevada Rules") state that "[a] lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing." Nevada Rule 1.9(a).

"The burden of proving that two matters are the same or substantially related falls upon the party moving for disqualification." *Coles v. Arizona Charlie's*, 973 F. Supp. 971, 973 (D. Nev. 1997) (citing *Robbins v. Gillock*, 109 Nev. 1015, 1017, 862 P.2d 1195, 1197 (Nev.1993) (citing *Commonwealth Ins. Co. v. Graphix Hot Line, Inc.*, 808 F.Supp. 1200, 1204 (E.D.Pa.1992)). Substantial relation is found where "the factual contexts of the two representations are similar or related, regardless of whether confidences were in fact imparted to the lawyer by the client in the prior representation." *Id* at 974 (citing *Humphrey*, 722 F.2d at 440). In evaluating whether the prior representation is substantially related, the court should not "inquire into whether an attorney actually acquired confidential information in the prior representation which is related to the current representation," rather the court should "undertake a realistic appraisal of whether confidences might have been disclosed in the prior matter that would be harmful to the client in the later matter." *Robbins*, 109 Nev. at 1018, 862 P.2d 1195. Accordingly, the moving party "is not required to divulge the confidences actually communicated." *Id.*

If the substantial relationship test is satisfied, there is a rebuttable presumption that the "attorney received confidential information during [the] prior representation." *Coles*, 973 F. Supp. at 974 (citing *Schloetter v. Railoc of Indiana, Inc.*, 546 F.2d 706, 710 (7th Cir.1976); *La Salle National Bank v. County of Lake*, 703 F.2d 252, 255-56 (7th Cir.1983); *Amgen v. Elanex Pharmaceuticals, Inc.*, 160 F.R.D. 134 (W.D.Wash.1994) (citing *Trone*, 621 F.2d at 999)). Courts apply a very strict standard of proof to the rebuttal of the presumption, and any doubt as to the existence of the asserted conflict of interest must be resolved in favor of disqualification. *See LaSalle National Bank*, 703 F.2d at 257.

"The district court has primary responsibility for controlling the conduct of lawyers practicing before the court." *Coles*, 973 F. Supp. at 973 (citing *Gas-A-Tron of Arizona v. Union Oil Company of California*, 534 F.2d 1322, 1325 (9th Cir.1976), *cert. denied*, 429 U.S. 861, 97 S.Ct. 164, 50 L.Ed.2d 139 (1976); *Paul E. Iacono Structural Engineer, Inc. v. Humphrey*, 722 F.2d 435, 439 (9th Cir.1983), *cert. denied*, 464 U.S. 851, 104 S.Ct. 162, 78 L.Ed.2d 148 (1983) (the district courts are free to regulate the conduct of lawyers appearing before them)). The court may "disqualify an attorney from representing a particular client in order to preserve the integrity of its judgment, maintain public confidence in the integrity of the bar, eliminate conflicts of interest, and protect confidential communications between attorneys and their clients. *Commonwealth Ins. Co. v. Graphix Hot Line, Inc.*, 808 F.Supp. 1200, 1203 (E.D.Pa.1992)." *Id.*

### 2. "Substantially Related"

Plaintiff has the burden to establish that the work Newman performed and was involved in while in-house counsel for SHFL is substantially related to the instant dispute. *Coles*, 973 F. Supp. at 973; *Robbins*, 109 Nev. at 1017 (citing *Commonwealth Ins. Co..*, 808 F.Supp. at 1204 (E.D.Pa.1992)).

#### a. Instant Action

Plaintiff's complaint alleges that it "currently markets a complete range of card shufflers, including single deck, batch, and continuous shufflers," and that it is the owner of patents worldwide, including the '982 and '935 Patents. (#1). Plaintiff states that DigiDeal markets and manufactures gaming equipment such as the DigiShuffle which is a "single deck card shuffler that randomly shuffles a deck of cards." *Id.* Plaintiff alleges that the DigiShuffle is intended to be a cheaper version of the plaintiff's products, the *DeckMate* and *DeckMate 2*. *Id.* Plaintiff asserts that defendant "has infringed, and continues to infringe, upon the Asserted Patents by using and offering to sell the DigiShuffle, which embodies the claims of the Asserted Patents." *Id.*

### b. Newman's Work As In-House Counsel for SHFL

Plaintiff attached several documents to its motion to disqualify, including the declaration of Jennifer Kim Farrar, Esq., to demonstrate that the issues in this litigation, as discussed above, are substantially related to the work performed by Newman as in-house counsel. (#15). Mrs. Farrar is the Senior Intellectual Property Counsel for SHFL and the individual that Newman reported to during his employment as an intellectual property attorney from August 2005, through August 2007. (#15-2). Newman was one of only two in-house intellectual property attorneys at the SHFL corporate headquarters during that time period and his role included performing work relating to SHFL's patents and trademarks. *Id.* Relevant to the issue of substantial relation, Newman (1) evaluated the novelty of SHFL's technology, (2) reviewed and revised patent disclosures, (3) performed patent marking analyses, (4) prepared trademark applications, and (5) provided legal services and advice to SHFL regarding its intellectual property. *Id.*

In performing these duties, Newman worked closely with other in-house counsel and engineers. *Id.* This is evidenced by the e-mails, patent disclosures, trademark applications, and patent marking analysis provided to the court. *Id.* Particularly relevant to the court's inquiry, is the patent marking analysis Newman performed, wherein he compared Patent 7,029,009 to "iShoe" playing card delivery device and made reference to the '982 Patent at issue. (#15-9). Mrs. Farrar asserts that in order to prepare the patent marking memo, he was required to (1) review SHFL's patent, (2) construe the meaning of the claims, and (3) work with engineers and other counsel to determine what patents should be marked on certain products, such as the *DeckMate* shuffler (referred to in the complaint (#1)). (#15-2).

Newman states on the front page of the patent marking memo that he "conducted a review of the patents listed below to determine whether they should be listed on the *DeckMate* card shuffling device," and that the "independent claims of each patent were interpreted according to applicable case law and

statutory guidelines and then compared, limitation by limitation, to the *DeckMate*." (#15-9). In the "Summary" section, Newman states that his summary is based on his legal analysis and "technical input from Sheri Johnson, Robert Rynda, Fred Boubour, and Attila Grauzer," and includes reference to Patent No. '982, one of the Asserted Patents in this action (#1). *Id.* According to Mrs. Farrar's declaration, this patent marking memo required Newman to perform a claim construction analysis relating to SHFL's patents, including the '982 Patent. (#15-2).

In addition to the patent marking memo, plaintiff provided the court with several pages of e-mails between Newman and other SHFL employees, such as product developers, engineers, and business managers. (#15-1 and #24). Although heavily redacted,[4] the e-mails indicate that despite his representation to the court (#20), Newman was greatly involved and had substantial responsibilities with regard to SHFL's patents, specifically the *DeckMate* product. (#15-7)[5]. Mrs. Farrar declares that the e-mails discussed "confidential information related to the mechanics and technology used in proprietary SHFL products." (#15-2). In one of the e-mails attached to the motion, Newman provided feedback and proposed revisions to a patent disclosure related to patents utilized in SHFL's *DeckMate* 2 shuffler. (#15-7 and #24). This *DeckMate* 2 shuffler, although different from the *DeckMate* 2 referenced in the complaint (#1), was a new product launched during Newman's employment that he took part in preparing a patent disclosure for. (#24). Plaintiff represents to the court that the patent disclosure

---

[4] SHFL is "not required to divulge the confidences actually communicated." *See Robbins*, 109 Nev. at 1018, 862 P.2d 1195.
[5] In e-mails during July of 2006, Newman stated that his "review of the *DeckMate* is pretty much completed," and titled an e-mail "Patent marking priority for MD-2 and *DeckMate*." (#15-7). Several e-mails between Newman and Robert Rynda through July and August of 2006, discussed the "*DeckMate* Patents." *Id.* In March of 2007, Newman sent an e-mail regarding a disclosure for "*DeckMate* II" and attached a "Confidential" revised disclosure. *Id.* Several other e-mails were sent by Newman in July of 2006, regarding "*DeckMate* patent markings" and in June of 2007, regarding "iDeal (TM) shuffler with card sorting feature." *Id.* Newman also sent an e-mail in July of 2006, discussing "Patent marking priority for MD-2 and *DeckMate*," and e-mails in July and August of 2006, regarding the "*DeckMate* Patents." *Id.* In May and June of 2007, Newman corresponded via e-mail regarding "new records of invention." *Id.* In June 2007, e-mails were exchanged titled "Gaming Table with Electronic Wagering System document" and "iDeal CR." *Id.* Newman sent e-mails regarding "One2Six P –Integrated Batch Shuffler for Punto Banco" and "Card Shuffler (ACE II) with Multiple Hands Recall Feature" in April of 2007 and e-mails regarding "*DeckMate* II Draft" and "bonus card projects" in March 2007. *Id.* In June of 2007, e-mails were sent regarding "The iDeal (TM) shuffler w/sorting feature," and in July of 2006 e-mails were sent regarding "*DeckMate*." *Id.*

"relates to SHFL's strategies for protecting its intellectual [property] that included certain interpretations of the scope of its patents." *Id.*

### c. Discussion

"[A] patent must describe the exact scope of an invention and its manufacture to "secure to [the patentee] all to which he is entitled, [and] to apprise the public of what is still open to them." *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 373, 116 S. Ct. 1384, 1387, 134 L. Ed. 2d 577 (1996) (citing *McClain v. Ortmayer*, 141 U.S. 419, 424, 12 S.Ct. 76, 77, 35 L.Ed. 800 (1891)). "[T]hese objectives are served by two distinct elements of a patent document:" (1) "it contains a specification describing the invention "in such full, clear, concise, and exact terms as to enable any person skilled in the art ... to make and use the same." 35 U.S.C. § 112; *see also* 3 E. Lipscomb, Walker on Patents § 10:1, pp. 183-184 (3d ed. 1985) (Lipscomb) (listing the requirements for a specification);" and (2) it "includes one or more "claims," which "particularly poin[t] out and distinctly clai[m] the subject matter which the applicant regards as his invention." 35 U.S.C. § 112." *Id.*

"[P]atent lawsuits charge what is known as infringement....and rest on allegations that the defendant "without authority ma[de], use[d] or [sold the] patented invention, within the United States during the term of the patent therefor....35 U.S.C. § 271(a)." *Id* at 374 (citing H. Schwartz, Patent Law and Practice 1, 75 (2d ed.1995)). "Victory in an infringement suit requires a finding that the patent claim "covers the alleged infringer's product or process," which in turn necessitates a determination of "what the words in the claim mean." *Id* at 374 (citing Schwartz, at 80). "[T]he construction of a patent, including terms of art within its claim, is exclusively within the province of the court." *Id* at 372.

Here, the court will make the determination of whether DigiDeal's DigiShuffle infringes on plaintiff's Asserted Patents. *Id.*  The court must, therefore, make findings as to "what the words in the claim [in both Asserted Patents] mean," and decide whether the Asserted Patents' claims cover the DigiShuffle. *Id* at 374. During Newman's time as in-house counsel for SHFL, he was heavily involved

in SHFL's patents, as evidenced by the e-mails, the declaration of Mrs. Farrar, the patent disclosures, and the patent marking memo which specifically references one of the Asserted Patents, '982 Patent. (#15 Exhibits 2, 7, and 9). It is clear that Newman participated in SHFL's efforts to protect its intellectual property, including its patents, through his patent disclosure for the *DeckMate* 2, and advised SHFL how it should interpret the scope of the claims of one of the Asserted Patents, in his patent marking memo. *Id.*

Disqualification does not require that the former representation be identical, rather the two representation must be only "similar or related." *Coles,* 973 F.Supp. 974. The court finds that Newman's former position as in-house counsel for SHFL and his work performed on patents specifically, are not only "similar or related" to the instant patent infringement action, but that Newman *actually* dealt with one of the Asserted Patents, the '982 Patent. *Id.* As a "substantial relationship" exists, the first inquiry is satisfied. *Id.*

### 3. Adverse Interests

Nevada Rule 1.9(a) provides that Newman's representation is not permitted in this action if DigiDeal's "interests are materially adverse to the interests of [SHFL] unless the [SHFL] gives informed consent." SHFL asserts that DigiDeal's product, the DigiShuffle, infringes on its Asserted Patents. (#1). SHFL asks this court to declare that DigiDeal infringed on one or more of the Asserted Claims, to enjoin DigiDeal from "further acts of infringement," and to order DigiDeal pay SHFL damages for the infringement. *Id.* DigiDeal argues that the court should dismiss the complaint, because, among other reasons, DigiDeal has not used, offered to sell, or sold any patented invention and SHFL is not entitled to seek injunctive relief. (#10). DigiDeal's interests are undoubtedly adverse to SHFL'S, and SHFL has not given consent, and with this motion (#15), opposes representation. This supports a finding of disqualification.

### 4. Confidential Information- Rebuttable Presumption

As the substantial relationship test is satisfied, "there is a rebuttable presumption" that Newman "received confidential information during [his] prior representation." *Coles*, 973 F. Supp. at 974 (citing *Schloetter v. Railoc of Indiana, Inc.*, 546 F.2d 706, 710 (7th Cir.1976); *La Salle National Bank*, 703 F.2d at 255-56; *Amgen v. Elanex Pharmaceuticals, Inc.*, 160 F.R.D. 134 (W.D.Wash.1994) (citing *Trone*, 621 F.2d at 999)). The court must undertake a "realistic appraisal" of whether Newman may have acquired confidential information from SHFL during his time as in-house counsel. *See Id* (citing *Robbins*, 109 Nev. at 1015, 862 P.2d 1195).

The court finds that SHFL presented the court with evidence supporting its position that Newman actually acquired confidential information. (#15). The patent marking memo prepared by Newman was deemed "Attorney Work Product- Confidential," and Newman stated that in preparing it, he received technical input from SHFL's employees, including engineers. (#15-9). This memorandum, that specifically addressed one of the Asserted Patents, was drafted using confidential information, not that which was "publically available," as defendant asserts (#20). *Id.* Mrs Farrar declares that Newman was exposed to confidential information as in-house counsel regarding SHFL's products, intellectual property, innovations, trade secrets, and legal and business strategies, and that he supervised the preparation of disclosures, "including shuffler disclosures containing SHFL proprietary information." *Id.*

The e-mails provided to the court demonstrate, and Mrs. Farrar confirms, that Newman had extensive communications with other SHFL employees regarding confidential information related to the mechanics and technology used in proprietary SHFL products. *Id;* (#15-7). Newman was only privy to this confidential information due to his position as in-house intellectual property counsel. (#15-2). Mrs. Farrar's declaration also states that due to his position, Newman obtained "intimate knowledge regarding internal workings of SHFL and the methods and strategies it used to protect its intellectual property and patents," and that his "role required him to work with both in-house and outside counsel to

develop and implement strategies regarding the protection of SHFL's intellectual property and patents." *Id.* In addition, Newman's communications with engineers, executives, and other counsel provided him with "confidential information relating to SHFL's policies, procedures, and strategies that were only provided to him due to his confidential relationship with the company." *Id.*

Under the "realistic approach," the court finds that Newman (1) has insight as to how SHFL interprets its claims, manages and protects its patents, and construes the claims of its patents (including '982), (2) understands the strengths and weaknesses of SHFL's interpretations and constructions of its patents, (3) was exposed to confidential information relating to the issues in this action, and (4) can anticipate how SHFL will litigate this action and engage in the claim construction process. *Coles*, 973 F. Supp. at 974. To rebut the presumption of receiving confidential information and the evidence and declaration provided by the plaintiff, Newman states that the Asserted Patents were "prepared and filed several years prior to [his] employment at SHFL," the patent marking memo did not require prior knowledge or confidential information, that the Asserted Patents were publically available years before his employment at SHFL, all of the "information that would be involved in decided this case is currently publically available," there was no "playbook" that he knew of, his employment ended over five years ago and "some key executive positions have been filled," and that this action "cannot relate to anything of a confidential nature." (#20-1).

The court must apply a "very strict standard of proof" to the rebuttable presumption that Newman obtained confidential information. *LaSalle National Bank*, 703 F.2d at 257. Resolving any doubts "in favor of disqualification," the court finds that defendant has not overcome the evidence submitted by plaintiff and has not demonstrated to the court that Newman was not exposed to confidential information. *Id.* As in *Coles,* 973 F.Supp 974, beyond the "realistic approach" requiring only a finding that Newman "may have acquired confidential information," plaintiff "submitted that actual confidences were shared" with Newman during his employment as in-house counsel for SHFL. It

is "entirely possible" that SHFL's other in-house counsel, engineers, and employees divulged confidential information to Newman regarding the protection, management, and interpretation of SHFL's patents and its strategies in litigating patent infringement cases. *See Coles,* 973 F.Supp 974.

The court finds that "in order to preserve the integrity of" the court, "maintain public confidence in the integrity of the bar, eliminate conflicts of interest, and protect confidential communications between attorneys and their clients," disqualification of Newman and the law firm of Howard & Howard is appropriate. *See* Nevada Rules 1.9(a) and 1.10(a) ("[w]hile lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules 1.7, 1.9, or 2.2..."). The court recognizes that defendant may suffer prejudice, but finds that there is a greater risk of prejudice to plaintiff from Newman's representation. As the action is in the early stages, defendant will be able to retain new counsel and defendant will suffer minimal prejudice.

Accordingly and for good cause shown,

IT IS ORDERED that plaintiff SHFL Entertainment, Inc.'s *Emergency* Motion To Disqualify Defendant DigiDeal Corporation's Counsel of Record (#15) is GRANTED.

DATED this 15th day of January, 2013.

_____
CAM FERENBACH
UNITED STATES MAGISTRATE JUDGE